**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

TIBOR FEHER, AGNES KISBENEDEK,    :

   :

            Plaintiffs,    :     **REPORT AND**

   :     **RECOMMENDATION**

   -versus-    :     25-CV-00039 (LDH) (CHK)

   :

THE DIMENSION GROUP LLC, 966    :
BERGEN LLC, et al    :

   :

           Defendants.    :

---------------------------------------------------------------x

CLAY H. KAMINSKY, United States Magistrate Judge:

Plaintiffs Tibor Feher and Agnes Kisbenedek bring this action against The

Dimension Group LLC, 966 Bergen LLC, Yafe Meod Corp., B.H. General

Contracting, Inc., Infinity Management NY LLC, Brooklyn Green Development

LLC, and NYJS Construction Corp. (together, "Defendants") for negligence, loss of

consortium, and violations of state labor law after Feher was injured while

performing construction work at Defendants' property. For the reasons explained

below, the Court recommends *sua sponte* dismissal of this action for lack of subject

matter jurisdiction.

## I.    Factual Background

The following facts are drawn from Plaintiffs' Second Amended Complaint,

Dkt. No. 46, Defendant 966 Bergen's Rule 7.1 statement, Dkt. No. 44, and testimony

given at the Court's evidentiary hearing held on November 10, 2025, Dkt. No. 77.

1

Plaintiffs, who are Hungarian citizens, base federal jurisdiction on diversity of citizenship pursuant to 28 U.S.C. § 1332. Second Am. Compl. ¶ 2. According to the Second Amended Complaint, Defendants are citizens of New York. *Id.* ¶ 7–32.

Pursuant to Rule 7.1, Defendants submitted corporate disclosure statements. *See* Dkt. No. 44. Defendant 966 Bergen LLC's statement identified several corporate members, including Emeiy Holdings LLC. *Id.* ¶ 3. Emeiy Holdings, in turn, has one member: Einav Makover. *Id.* 966 Bergen's statement lists Makover as a dual citizen of Israel and the United States and domiciled in Ramot Hashavim, Israel. *Id.*

Because federal courts lack diversity jurisdiction over cases involving United States citizens domiciled abroad, this Court issued an order to show cause why this case should not be dismissed for lack of subject matter jurisdiction. *See* Oct. 6, 2025 Docket Order. The parties' responses to the Court's order revealed a factual dispute as to Makover's domicile, with Plaintiffs alleging that he was domiciled in New York. Accordingly, the Court scheduled an evidentiary hearing on the issue of Makover's domicile.

During the hearing, Makover gave testimony under oath. Having listened to his testimony and observed his demeanor as he answered questions on both direct and cross examination, the Court found Makover's testimony credible. His testimony established the following facts:

Makover was born and raised in Israel. Hearing Transcript ("Tr.") 10:2–5; 55:18–20. Makover moved to New York around 2003 or 2004, with his wife joining shortly thereafter. Tr. 55:18–20; 56:1–4. Both Makover and his wife are dual

citizens of Israel and the United States. Tr. 11:2–7; 56:7–15. While his wife became a U.S. citizen when she was a child, Makover became a U.S. citizen around 2015. Tr. 11:10–11; 18:22–23; 56:12–15. Makover's four children were born in the United States and are also dual citizens of the United States and Israel. Tr. 25:8–16.

Makover lived in the United States from 2003 to 2020. Tr. 12:6–8; 25:19–25; 55:18–20. While living in New York, Makover obtained a U.S. passport, drivers' license, and bank account. Tr. 10:10–11, 15–17; 17:9–21; 19:4–6, 22–24. He also purchased a car and three all-terrain vehicles (ATVs), although the ATVs were later gifted to a friend. Tr. 20:3–25; 21:7–25; 22:10. Makover and his wife also purchased a property in the Catskills that his family used as a weekend home. Tr. 45:11–20. While living in New York, Makover never registered to vote. Tr. 16:2–4; 29:17–19.

In 2020, Makover and his family moved back to Israel. Tr. 12:6–8; 25:19–25. Makover currently owns two homes in Israel, using one as his primary residence. Tr. 12:12–25; 13:1–10. His family lives in Israel full-time, and his children attend school in Israel. Tr. 12:4–11. Makover's doctors are located in Israel. Tr. 57:3–11. Makover files business and personal income tax returns in the United States, although he lists his Israel residence as his primary residence on his tax forms. Tr. 16:5–15. Makover has one bank account open in Israel and several open in the United States. Tr. 17:9–21.

Makover works in real estate development and owns about 20 real estate companies in the United States and a few in Greece. Tr. 27:23–25; 28:1–5, 8–22. About 18 of Makover's real estate companies are located in New York, each owning

3

a building located in the area. Tr. 15:1–14. Two of Makover's companies own properties located in Massachusetts. Tr. 15:17–20. Makover only works in the United States and Greece—he does not work in Israel. Tr. 28:6–15.

Makover has rented a studio apartment in Manhattan since 2021. Tr. 13:22–25; 14:1–5; 55:1–11. Makover comes to New York about every six to eight weeks for business and stays at the rental apartment when in town. Tr. 36:11–24; 36:1–10. He estimated that he spent about 60 days in New York from January to December 2025. Tr. 14:6–11; 35:1–8. Makover testified that primarily travels on his Israeli passport, unless he is traveling to and from the United States. Tr. 32:6–25.

Since moving, his wife and children have visited New York only twice—with his wife visiting one additional time without their children. Tr. 26:1–7; 27:1–11. On the two occasions his family visited New York, they stayed in Makover's Manhattan rental for at least part of their visit. Tr. 26:15–22. Makover still owns the car he purchased when living in New York, but he keeps it at a friend's house in Staten Island while he is in Israel. Tr. 23:22–25; 24:1–4. He currently rents out his weekend home in the Catskills. Tr. 46:2–7.

## II.    Legal Standards

Although neither party had questioned this Court's jurisdiction, courts have an independent obligation to assure that federal jurisdiction exists in each case. *See Robbins v. City of New York*, 254 F. Supp. 3d 434, 436 (E.D.N.Y. 2017*); Durant, Nichols, Houston, Hodgson & Cortese–Costa P.C. v. Dupont*, 565 F.3d 56, 62–63 (2d Cir. 2009) ("If subject matter jurisdiction is lacking and no party has called the

4

matter to the court's attention, the court has the duty to dismiss the action sua sponte.") (citing *Louisville & Nashville R.R. v. Mottley,* 211 U.S. 149, 152 (1908)).

Plaintiffs assert that the Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332, which provides for diversity jurisdiction over disputes where (1) the amount in controversy exceeds $75,000, and (2) there is complete diversity of citizenship between the parties. 28 U.S.C. § 1332(a). To have complete diversity, the parties must be citizens of two different states or "citizens of a State and citizens or subjects of a foreign state." § 1332(a); *Am. Empire Surplus Lines Ins. Co. v. Art FX Murals LLC*, No. 25-CV-2332, 2025 WL 2709978, at *2 (S.D.N.Y. Sept. 23, 2025). Ultimately, the party asserting subject matter jurisdiction bears the burden of establishing that such jurisdiction exists. *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996). Diversity is determined by the facts existing at the filing of the complaint. *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 571 (2004); *Van Buskirk v. United Grp. of Companies, Inc.*, 935 F.3d 49, 53 (2d Cir. 2019).

For diversity purposes, a limited liability company ("LLC") has the citizenship of each of its members. *Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012); *United States Liab. Ins. Co. v. M Remodeling Corp.*, 444 F. Supp. 3d 408, 410 (E.D.N.Y. 2020) ("In pleading an LLC's citizenship, the identity and citizenship of each member has to be specifically alleged... [meaning] a [party] must allege the identity and citizenship of [an LLC's] members, proceeding up the chain of ownership until it has alleged the identity and citizenship of every individual and corporation with a direct or indirect interest in

the LLC."). As an individual, Makover's citizenship is determined by his domicile—the "true, fixed, principal, and permanent home, to which that person intends to return." *United States v. Venturella*, 391 F.3d 120, 125 (2d Cir. 2004) (quoting Black's Law Dictionary (7th ed. 1999)). Although an individual can have multiple residences, they can only have one domicile. *Dukes v. N.Y.C. Emps.' Ret. Sys.*, 361 F. Supp. 3d 358, 367 (S.D.N.Y. 2019). Because Makover is a member of Emeiry Holdings, and Emeiry Holdings is, in turn, a member of Defendant 966 Bergen, Makover's domicile will be imputed to 966 Bergen. *See United States Liab. Ins. Co.*, 444 F. Supp. 3d at 410.

Courts assess the totality of the evidence when determining an individual's domicile. *Gutierrez v. Fox*, 966 F. Supp. 214, 217 (S.D.N.Y. 1997). Factors considered by the Second Circuit include "voting registration, employment, current residence, location of real and personal property, location of spouse and family, driver's license, automobile registration, tax payment and addresses, and location of a person's bank account and physician." *Techno-TM, LLC v. Fireaway, Inc.*, 928 F. Supp. 2d 694, 697 (S.D.N.Y. 2013). No single factor is conclusive. *Gutierrez*, 966 F. Supp. at 217. Although courts also consider an individual's stated intent to remain at a particular domicile, such statements may be self-serving and are thus not conclusive of intent. *Shcherbakovskiy v. Seitz*, No. 03-CV-1220, 2010 WL 1063566, at *3 (S.D.N.Y. Mar. 23, 2010); *Bevilaqua v. Bernstein*, 642 F. Supp. 1072, 1074 (S.D.N.Y. 1986).

6

If an individual, like Makover, is a dual citizen of the United States and another county, courts in the Second Circuit consider only the American citizenship to determine diversity. *See Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 507 (2d Cir. 1991) ("[O]nly the American nationality of the dual citizen should be recognized under 28 U.S.C. § 1332(a)." (quotation marks omitted)); *Am. Empire*, 2025 WL 2709978, at \*3 (considering only the American citizenship of a dual citizen LLC member).

Finally, a U.S. citizen domiciled abroad is neither a citizen of any state of the United States nor a citizen of a foreign state. *Herrick Co. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 322 (2d Cir. 2001)); *Raymond Loubier Irrevocable Trust v. Loubier*, 858 F.3d 719, 722 (2d Cir. 2017). Accordingly, "§ 1332(a) does not provide that the courts have jurisdiction over a suit to which [U.S. citizens domiciled abroad] are parties." *Herrick Co.*, 251 F.3d at 322 (quoting *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 68 (2d Cir. 1990).

## III.    Discussion

Whether subject matter jurisdiction exists in this case turns on Makover's domicile. As Makover is a dual citizen, only his American citizenship is considered in the diversity analysis. *See Action S.A.*, 951 F.2d at 507. Because Plaintiffs are foreign citizens, if Makover is domiciled in New York, there is complete diversity amongst the parties. But if Makover is domiciled in Israel, the Court lacks subject matter jurisdiction because Makover's U.S. citizenship and domicile are imputed through Emeiy Holdings, LLC to Defendant 966 Bergen LLC and the Court does not

have subject matter jurisdiction in cases involving U.S. citizens domiciled abroad. *See Herrick Co.*, 251 F.3d at 322.

The totality of the evidence clearly establishes that Israel is Makover's "true, fixed, principal, and permanent home." *Venturella*, 391 F.3d at 125 (citation omitted). Most of Makover's life is located in Israel and has been since his family moved back to Israel in 2020. His family lives in Israel, his children attend school in Israel, and his doctors are in Israel. *See Nat'l Artists Mgmt. Co. v. Weaving*, 769 F. Supp. 1224, 1228 (S.D.N.Y. 1991) ("[T]he residence of a married person's spouse and children (if the couple has not separated) is given considerable weight."); *Suedrohrbau Saudi Co. v. Bazzi*, No. 19-CV-5130, 2021 WL 4065523, at *4 (E.D.N.Y. Sept. 7, 2021), *aff'd*, No. 21-2307-CV, 2023 WL 1807717 (2d Cir. Feb. 8, 2023) (weighing fact that the defendants saw doctors in Lebanon as evidence supporting an intent to remain in Lebanon). Further, Makover testified that he considers his home in Israel as his primary residence, which is supported by the fact that he lists his Israeli residence on his United States tax forms. *Cf. Weaving*, 769 F. Supp. at 1229 (considering the address where an individual receives mail as evidence of domicile).

Many of Makover's remaining ties to New York are those that he also maintains with Israel. For example, Makover has a drivers' license and passport from both countries, has bank accounts in both countries, and owns properties in both countries. These factors do not contradict Makover's clearly stated intent to remain in Israel. *See Bazzi*, 2021 WL 4065523, at *5 ("U.S. tax returns are less

8

salient [evidence of intent] because there is no optionality associated with their filing").

That Makover works in New York and rents an apartment in New York also does not contradict his intent to remain in Israel. Makover maintained these ties because of his frequent travel to New York for business. While one's place of work can certainly be evidence of domicile, other factors overwhelmingly show Makover intends to remain in Israel. *See Reviakine v. Mednikov*, No. 15-CV-00227, 2016 WL 8711206, at *3 (E.D.N.Y. Apr. 29, 2016) ("Courts have routinely found that spending significant amounts of time in a state for work related purposes is not sufficient to establish domicile."); *Young v. Century House Hist. Soc'y*, 117 F. Supp. 2d 277, 282 (N.D.N.Y. 2000) (determining plaintiff was domiciled in New York where "aside from renting the apartment and working in New Jersey, all other major factors point to the conclusion that plaintiff maintained his domicile in New York.").

Based on the testimony provided at the evidentiary hearing, Makover intends to remain in Israel indefinitely and is therefore domiciled in Israel. Because Makover is a United States citizen domiciled abroad—and was domiciled abroad at the time the lawsuit was filed—this Court lacks diversity jurisdiction over this case. *See Herrick Co.*, 251 F.3d at 322; *Fuerst v. Furest*, 832 F. Supp. 2d 210, 217 (E.D.N.Y. 2011).

## IV.    Conclusion

For the reasons stated above, the Court respectfully recommends that this action be dismissed for lack of subject matter jurisdiction.

9

\* \* \*

This report and recommendation will be filed electronically. Objections to this report and recommendation must be filed within fourteen (14) days of filing. Failure to file objections within the specified time waives the right to appeal both before the district court and appellate courts. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) (providing the method for computing time); *Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a ... report [and recommendation] operates as a waiver of any further judicial review of the magistrate[ judge's] decision" (quotation marks omitted)).

SO ORDERED.

/s/ Clay H. Kaminsky

CLAY H. KAMINSKY
United States Magistrate Judge

Dated:      January 15, 2026

Brooklyn, New York

10